Per Curiam.

We see no objection to-the bond in question.
It was very proper, under the circumstances, that such a bond *51 should be taken. It cannot be supposed to have infl .enced the minds of the commissioners in determining whether a new road from Taunton to New Bedford would be of common convenience and necessity.[1] The road would have been useless, if it nad stopped at the lines of Plymouth county, and it was proper to take measures to prevent a useless expense to the county of Bristol in case the commissioners of Plymouth county should refuse to locate the part of the road falling within the county. It is a strong case for the exercise of the discretion of the Court in support of the proceedings, unless injustice has been done.
We think the objection, that the location goes to and from the trees described, cannot avail. When the part of the road which lies in Plymouth county shall be made, the road will lead from town to town.
The objection that the return of the location was not made to the next Court of Sessions held after the service was performed., would be fatal in case the writ of certiorari had issued.
But the persons interested in the return are those who own the land over which the road runs. No complaint has been made by any such owner. It is true that the inhabitants of Freetown are in some-degree interested, as they may be burdened with the expense of repairs ; but this is not so high an interest as to require the issuing of a certiorari, when the public convenience demands the establishment of the road.
The only doubt in our minds is in respect to the notice. The objection on this point would be cured by proof of notice, or of an appéarance on behalf of the town of Freetown. Claflin states, that it was customary to give notice to town clerks, hut as the counsel for Freetown says he can prove by the clerk of that town that no such notice was given, we cannot presume notice from Claflin’s testimony. The case will, therefore, be i ontmued nisi, in order that the parties may produce evidence on this point.
The Court were accordingly furnished, in the vacation, with several affidavits.
In the advertisement published in November 1826, and sub *52 sequently to the petition of Baylies in 1827, the proposed road was described as “ a public highway from New Bedford to Taunton by the way of Rounseville’s furnace.”
By the affidavit of Job Morton, the chairman of the commissioners of highways, it appeared that at their first meeting it < was determined by them, that notice of the pendency of a petition, published in a newspaper printed in the county, was reasonable and sufficient notice within the meaning of the statute.
The opinion of the Court was afterward drawn up by
Parker C. J.
This application for a certiorari comes be-f°re us under circumstances which incline and authorize us to refuse it, if the parties in interest have had a hearing before the commissioners, or such notice of the time and place of hearing, that they might have presented their objections seasonably.
Towns or individuals whose interests may be affected by the opening of a new road, ought not to lie by and withhold their objections until great expense has been incurred, and then apply to this Court to rip up the whole proceedings. As most of the objections to the doings of the commissioners are aside from the real merits of the case, we have taken much pains to ascertain whether due notice was given of the meeting of the commissioners, to consider the application for this road, so that a hearing might have been had of the inhabitants of Freetown, who now ask to have the proceedings quashed. The result of our inquiries is, that there was without doubt such notice.
The statute giving authority to commissioners of highways prescribes no particular mode of notice. It merely requires that “ reasonable notice ” shall be given of the time and place appointed for viewing the road prayed for, and after such view and hearing of the parties, the commissioners shall have power to order and determine the making &c. of such road. St. 1825, c. 171. The mode of giving notice seems to have been left by the legislature to the discretion of the commissioners. They adopted the practice of advertising in a newspaper printed in the county, the time and place of meeting for the consideration of the application. All official notices had been usually published in the same way. We have seen that the original application for the road, and the time and place of hearing *53 thereon, were thus advertised, and that other parties interested did in fact attend the hearing.
The petition was, upon the first hearing, dismissed ; after which it was revived by an application for a rehearing by Francis Baylies and others, and upon this application new notice was given of the time and place of hearing, in the same way. The route of the proposed road was sufficiently described, by referring to Rounseville’s furnace, to give notice to the inhabitants of Freetown, of the course it would take through that town. In addition to this, one of the commissioners, the chairman, was also one of the selectmen of that town ; and be states "n his affidavit, that he informed another of the selectmen of hat town (there being hut three) of the pendency of the petition for the road, and that they determined it was not necessary to call a meeting of the inhabitants on the subject. There having been legal notice of the meetings, and reason to suppose there was actual notice to those officers of the town whose duty it was to take charge of the matter for the town, we do not think that at this period, after the road has been laid out and actually worked at a great expense to the individual who contracted with the commissioners, a certiorari ought to be granted on account of formal defects in the proceedings.[1]

Petition dismissed.

 See Dudley v. Cilley, 5 N. Hamp. R. 558.

 See Revised St* . 24, § 2, 6.